## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| ADELBERT M. "BERT" BRYAN,<br>INDIVIDUALLY and OFFICIALLY as a<br>Delegate to the Fifth Constitutional Convention<br>AND MARY MOORHEAD, INDIVIDUALLY<br>and OFFICIALLY as Secretary of the<br>Fifth Constitutional Convention,<br><br>        Plaintiffs,<br><br>LAWRENCE SEWER, as a Delegate to the<br>Fifth Constitutional Convention,<br><br>        Intervenor,<br>    v.<br><br>FIFTH REVISION CONSTITUTIONAL<br>CONVENTION and 29th LEGISLATURE<br>OF THE VIRGIN ISLANDS,<br><br>        Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2012-097 |

**Attorneys:**
**Adelbert Bryan,** *Pro Se*
St. Croix, USVI
        *For the Plaintiffs*

**Yohana M. Manning, Esq.,**
St. Croix, USVI
        *For Intervenor Lawrence Sewer*

**Senator Ronald E. Russell, Esq.,**
St. Croix, USVI
        *For Defendant 29th Legislature of the Virgin Islands*

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Plaintiffs Adelbert Bryan and Mary Moorhead's "Emergency Motion for a Temporary Restraining Order," which was filed on September 28, 2012, (Dkt. No. 2); a Motion to Intervene filed by the Fifth Constitutional Convention on October 2, 2012, (Dkt. No. 16); and an oral Motion to Intervene, which was made at the October

3, 2012 hearing, by Lawrence Sewer in his individual capacity and as a delegate to the Fifth Constitutional Convention.  A hearing on these Motions was held on October 3, 2012.[1]   On October 5, 2012, this Court entered an Order denying the "Emergency Motion for a Temporary Restraining Order."  (Dkt. No. 21).

This Memorandum Opinion provides a fuller exposition of the Court's prior ruling, which denied Plaintiffs' Motion for a Temporary Restraining Order on the grounds that Plaintiffs have failed to show a likelihood of success on the merits of their preemption claims.  This Opinion also addresses other matters raised in the written submissions by the parties and at the hearing on Plaintiffs' Motion.   As to those matters, the Court: (1) will deny the Fifth Constitutional Convention's Motion to Intervene; (2) will grant the oral motion of Lawrence Sewer to intervene; and (3) finds that the Plaintiffs and Sewer have standing to pursue this action.

## I.   BACKGROUND

### A.  The Virgin Islands Constitutional Convention

In 1976, the United States Congress passed Public Law No. 94-584, which provides in pertinent part:

> (2)(a) The Legislatures of the Virgin Islands and Guam, respectively, are authorized to call constitutional conventions to draft, within the existing territorial-Federal relationship, constitutions for the local self-government of the people of the Virgin Islands and Guam . . . .
>
> (3) The members of such constitutional conventions shall be chosen as provided by the laws of the Virgin Islands and Guam, respectively (enacted after the date of enactment of this Act) . . . .

---

[1]     In their Complaint, Plaintiffs also named Governor John P. de Jongh, Jr., as a Defendant. (*See* Compl., Dkt. No. 1).  However, at the hearing on this matter, Plaintiffs and Defendant Governor jointly moved to dismiss the Governor from this lawsuit.  The Court granted this request.  Accordingly, the Governor is no longer a party to this case.  *See* Fed. R. Civ. P. 41.

Pub. L. No. 94-584, §§ 1-3, 94 Stat. 2899, 1976 H.R. 9460 (1976).

On September 29, 2004, the Virgin Islands Legislature passed Act No. 6688, which established the Fifth Constitutional Convention. Act No. 6688 was signed into law on October 29, 2004. *See* Act No. 6688, 25th V.I. Leg. (2006); *see also St. Thomas-St. John Board of Elections v. Daniel*, 49 V.I. 322, 325, 2007 WL 4901116 (V.I. 2007) (discussing procedure for electing delegates to the Fifth Constitutional Convention). Pursuant to Act No. 6688, the Fifth Constitutional Convention is comprised of thirty elected delegates. *See* Act No. 6688.

As alleged in Plaintiffs' Complaint, on June 1, 2009, the Fifth Constitutional Convention delivered a proposed constitution to the Governor of the Virgin Islands. (Compl. ¶ 13, Dkt. No. 1). On June 11, 2009, the Governor held a press conference wherein he indicated that he would not be forwarding the proposed constitution to the President of the United States. *Id*. at ¶ 18. On or about December 31, 2009, after the issuance of a writ of mandamus requiring him to do so, the Governor forwarded the proposed constitution to the President of the United States. *Id.* at ¶ 21; *see also James v. de Jongh*, 2009 WL 8473848 (V.I. Super. Ct. Dec. 23, 2009) (issuing writ of mandamus requiring Governor de Jongh to transmit proposed constitution to the President).

On or about March 1, 2010, the President of the United States forwarded his comments on the proposed constitution to the United States Congress. (Compl. at ¶ 22). In his comments to Congress, the President indicated that the United States Department of Justice had identified nine areas of concern with the proposed constitution. *Id*. at ¶ 23.

After a hearing on the matter, Congress passed Senate Joint Resolution 33 ("Joint Resolution 33"). *See* S.J. Res. 33, 11th Cong., 124 Stat 1309, 1309-1310 (2010). Joint Resolution 33 lists the nine areas of concern identified by the Department of Justice and states that Congress "shares the concerns expressed by the executive branch of the Federal Government

on certain features of the proposed constitution of the United States Virgin Islands and shares the view that consideration should be given to revising those features."  S.J. Res. 33, 11th Cong., 124 Stat 1309, 1309-1310 (2010).   Joint Resolution 33 further provides:

> It is the sense of Congress that Congress—
>
> (1) recognizes the commitment and efforts of the Fifth Constitutional Convention of the United States Virgin Islands to develop a proposed constitution; and
>
> (2) urges the Fifth Constitutional Convention of the United States Virgin Islands to reconvene for the purpose of reconsidering and revising the proposed constitution in response to the views of the executive branch of the Federal Government.

*Id*. at 1310.

Joint Resolution 33 also amended section 5 of Public Law 94-584, which, as amended, reads: "[T]he constitution . . . shall be deemed to have been approved by the Congress within 60 legislative days after its submission by the President, unless prior to that date the Congress has approved the constitution, or modified or amended it, in whole or in part, or has *urged the constitutional convention to reconvene,* by joint resolution." *Id*. at 1310 (emphasis added to show amended language).  Section 5(c), which  was also added by Joint Resolution 33, provides:

> (1) If a convention reconvenes and revises the proposed constitution, the convention shall resubmit the revised proposed constitution simultaneously to the Governor of the Virgin Islands and the President.
>
> (2) Comments of President.--Not later than 60 calendar days after the date of receipt of the revised proposed constitution, the President shall—
>
> (A) notify the convention, the Governor, and Congress of the comments of the President on the revised proposed constitution; and
>
> (B)  publish the comments in the Federal Register.

*Id*.

On August 28, 2012, the Virgin Islands Legislature passed Act No. 7386. *See* Act No. 7386, 29th V.I. Leg. (2012). The Act was signed into law by the Governor on September 11, 2012. *Id*. In the preamble, Act No. 7386 recognizes that the Fifth Constitutional Convention drafted a proposed constitution that was "returned [by Congress] . . . for revision by the Convention." *Id*. The Act provides in pertinent part:

(b) The 5thRC [Fifth Revision Convention] is hereby established to revise the draft Virgin Islands Constitution created by the Fifth Constitutional Convention, and is called to convene during the period beginning October 1, 2012 until October 31, 2012 to ratify and approve the final revised draft constitution submitted by the legal team assembled to revise the document as mandated by the Congress and the President.

(c) The 5thRC shall be comprised of the 30 elected delegates of the Fifth Constitutional Convention and a legal team as comprised below.

(d) The 5thRC shall have the power and duty to revise the draft Fifth Constitutional Convention document as directed by Congress in Senate Joint Resolution 33 . . . and in addition, the 5thRC delegates may further revise and/or modify the document, provided the additional revisions and/or modifications are consistent with the U.S. Constitution and as stated herein.

(e) To reduce costs, fees, and other expenses, the 5thRC shall use for all revisions, modifications, a determination of legal sufficiency and all legal matters, the 5thRC legal team. This legal team shall consist of five (5) attorneys to include the Chief Legal Counsel of the 29th Legislature of the Virgin Islands, a Virgin Islands Bar Association appointee, an attorney appointed by the Governor, an attorney appointed by the Chief Justice of the Supreme Court and an attorney appointed by the President of the Legislature.

\*\*\*

(h) All decisions of the 5thRC shall be by affirmative vote of a majority of those voting.

\*\*\*

(1) The 5thRC shall adopt a proposed revised Virgin Islands Constitution no later than October 31, 2012. If the 5thRC, by a two thirds majority vote of all the delegates, agrees upon a proposed revised draft of the Virgin Islands Constitution by October 31, 2012, then the President of the 5thRC shall submit it to the Governor of the Virgin Islands and the President of the United States, in

5

compliance with the provisions of Senate Joint Resolution 33 and the remaining relevant provisions of Act 6688.[2]

(m) If the 5thRC does not adopt a proposed revised Virgin Islands Constitution as provided by this law, then the 5thRC and the Fifth Constitutional Convention are dissolved and the Legislature of the Virgin Islands shall have the full authority to address the Virgin Islands Constitution, as it deems appropriate.

*Id*.

### B. Procedural History

On September 28, 2012, Plaintiffs filed their Complaint together with an "Emergency Motion for a Temporary Restraining Order."  (*See* Dkt. Nos. 1 and 2).  The thrust of Plaintiffs' Emergency Motion for a Temporary Restraining Order—and this lawsuit—is the contention that Act No. 7386 "is in direct conflict with Public Law 94-584 and Senate Joint Resolution 33" because "[i]t grants authority to the Fifth Revision Convention to revise, propose, and submit a constitution for the U.S. Virgin Islands," when Public Law 94-584 and Senate Joint Resolution 33 grant such authority *only* to the Fifth Constitutional Convention.  (Plts.' Mot. at 2-3, Dkt. No. 2).   Plaintiffs claim that because Act No. 7386 is in "direct conflict" with Public Law 94-584 and Senate Joint Resolution 33, the Act is preempted by these federal laws.  *Id*.  On that basis, Plaintiffs sought a temporary restraining order enjoining the Fifth Revision Convention from convening.

---

[2]     In their written submissions and at the hearing, the parties took different positions regarding whether Act No. 7386 provides that the members of the legal team have the right to vote on decisions concerning the proposed constitution.  Defendants 29th Legislature and the Governor argue that the members of the legal team have no voting rights under the Act—such rights being reserved to the thirty elected delegates of the Fifth Constitutional Convention—while Plaintiffs argue to the contrary.  The disagreement over voting rights concerns the interpretation of a local law, the resolution of which is not necessary to address the federal preemption claims pending before the Court.

Defendant 29th Legislature filed its opposition to Plaintiffs' Emergency Motion on October 2, 2012. (*See* Dkt. Nos. 14, 16). The Legislature argues, *inter alia*, that Plaintiffs lack standing to sue and have failed to show that Act No. 7386 is preempted by federal law.[3]

On October 2, 2012, the Fifth Constitutional Convention filed a Motion to Intervene. (Dkt. No. 16). At the October 3, 2012 hearing, Lawrence Sewer, who was at the hearing in his capacity as President of the Fifth Constitutional Convention, orally moved to intervene in his individual capacity and as a delegate to the Fifth Constitutional Convention.

## II.   APPLICABLE LEGAL STANDARDS

### A.  Legal Standard for a Temporary Restraining Order

"The function of the temporary restraining order is to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Thus, Plaintiffs must show that: they are likely to succeed on the merits of their preemption claims; they will suffer irreparable harm without an injunction; the harm caused to the nonmoving party does not outweigh the benefits of injunctive relief; and the injunction is in the public interest. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356 (3d Cir. 2007); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). Likelihood of success on the merits is a critical element, the absence of which "necessarily" bars the issuance of a temporary restraining order. *See Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) ("The moving party's

---

[3] Defendant Governor filed an opposition to the "Emergency Motion for a Temporary Restraining Order" in which he argued, among other things, that Plaintiffs lack standing to sue. (*See* Dkt. No. 15). At the hearing, Defendant 29th Legislature adopted the Governor's arguments.

failure to show a likelihood of success on the merits must necessarily result in the denial of a preliminary injunction.") (internal quotations omitted); *McTernan v. City of York, Pa.*, 577 F.3d 521, 528 (3d Cir. 2009) (finding that plaintiffs having no chance to succeed on merits was dispositive in preliminary injunction analysis); *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) ("[A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits."); *Bonnell v. Lorenzo*, 241 F.3d 800, 825 (6th Cir. 2001) ("Having found that Plaintiff has failed to show a substantial likelihood of succeeding on the merits of his First Amendment claim, this preliminary injunction factor is thus dispositive of the issue, and we need not address the remaining three factors.").

### B.  Federal Preemption

"[T]he Supremacy Clause of the Constitution in art. VI, cl. 2 [] provides that the Constitution and laws in pursuance of it 'shall be the supreme Law of the Land.'" *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3d Cir. 2012) (quoting Const. art. VI, cl. 2). "The Supremacy Clause invalidates state law that 'interferes with or is contrary to federal law.'" *Lomando v. United States*, 667 F.3d 363, 377 (3d Cir. 2011) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)).  "Under the doctrine of federal preemption, state laws are invalid if they 'conflict with an affirmative command of Congress.'" *Treasurer of N.J.*, 684 F.3d at 406 (quoting *North Dakota v. United States*, 495 U.S. 423, 434 (1990)).  Federal law can supersede state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citing *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).  Conflict preemption—which Plaintiffs claim is the primary relevant preemption doctrine here—occurs "when compliance with both

state and federal law is impossible, or where state law erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. (internal quotations omitted).[4]

"In analyzing a potential conflict between federal and state law, [the Court] must be 'guided . . . by the rule that the purpose of Congress is the ultimate touchstone in every preemption case.'" *Deweese v. National R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 246 (3d Cir. 2009) (quoting *Holk v. Snapple Beverage Corp*., 575 F.3d 329, 334 (3d Cir. 2009)); *see also Hefferman v. U.S. Virgin Islands*, 2010 WL 4942160, at *3 (D.V.I. Nov. 30, 2010) (same).  The Court is "required to consider 'the entire scheme of the [federal] statute' and identify 'its purpose and intended effect.'" *Deweese*, 590 F.3d at 246 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  Further, courts should "seek to avoid [preemption] when possible," *id*. (citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432, 449 (2005)), and "should avoid a holding of preemption that is premised on a merely potential conflict between state and federal law." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (citing *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982));  *see also Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 882  (D.C. Cir. 1983) ("In the construction of such laws, courts indulge a rule of construction . . . which avoids finding a conflict if at all possible.").   Finally, "[t]he party asserting federal preemption bears the burden of proof."  *Hefferman*, 2010 WL 4942160, at *3 (citing *Green v. Fund Asset Management, L.P*., 245 F.3d 214, 230 (3d Cir. 2001)).

---

[4]     At the hearing, Plaintiffs also argued that Act No. 7386 is invalid based on field preemption.  As discussed below, that claim has no merit.

### III.     DISCUSSION

#### A. Intervention

##### 1.  The Fifth Constitutional Convention

The Fifth Constitutional Convention seeks to intervene in this matter. At the hearing, Defendant 29th Legislature adopted the argument initially advanced by the Governor that the Fifth Constitutional Convention cannot intervene because it lacks the capacity to sue.  In support of its argument, the 29th Legislature cited an October 13, 2009 Memorandum Opinion issued by the Superior Court of the Virgin Islands in Case No. SX-09-CV-319—an action brought by the Fifth Constitutional Convention, its members, and other individuals against the Governor of the Virgin Islands seeking a writ of mandamus requiring him to transmit a proposed constitution to the President of the United States.  In that Memorandum Opinion, the Superior Court found that the "[Fifth Constitutional] Convention . . . do[es] not have standing under Act 6688 to bring an action on behalf of the Convention" because it lacks the "authority to sue or be sued under Act 6688."  (*See* October 13, 2009 Memorandum Opinion at 5, Virgin Islands Superior Court Case No. SX-09-CV-319).   The Superior Court first looked to Federal Rule of Civil Procedure 17(b)(3) for the proposition that "capacity to sue or be sued is determined by the law of the state where the court is located."  *Id*. at 4.  The Superior Court then reviewed Act No. 6688—the Act authorizing the Fifth Constitutional Convention—and found that the Act did not provide the Fifth Constitutional Convention with the capacity to sue or be sued. *Id*.

This Court has also reviewed Act No. 6688, and—like the Superior Court—finds that it does not authorize the Fifth Constitutional Convention to sue or be sued.[5]   As such, the Fifth Constitutional Convention's Motion to Intervene must be denied.   *See* Fed. R. Civ. P. 17(b).

### 2.  Lawrence Sewer

Lawrence Sewer seeks to intervene in this matter in his individual capacity and as a delegate to the Fifth Constitutional Convention. Federal Rule of Civil Procedure 24 provides for two different types of intervention: intervention as of right and permissive intervention.  Fed. R. Civ. P. 24.  "[A] litigant seeking intervention as of right under Rule 24(a)(2) must establish 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests."   *Liberty Mut. Ins. Co. v. Treesdale, Inc*., 419 F.3d 216, 220 (3d Cir. 2005).  "Each of these requirements must be met to intervene as of right." *Id*. (quoting *Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995)).

---

[5]     This state-law determination of capacity to sue or be sued is subject to the exception that "a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or the laws of the United States." Fed. R. Civ. P. 17(b)(3).   However, the Fifth Constitutional Convention is neither a partnership nor an "unincorporated association" for purposes of Rule 17(b)(3).  *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ("Nothing in the language of Rule 17(b) or in the early case law that led to the adoption of Rule 17 . . . warrants an extension of Rule 17(b) to government units. Also, nothing in the advisory committee notes to Rule 17 or in the case law interpreting and applying Rule 17 has ever extended this "unincorporated association" exception to government units, subdivisions or agencies."); *see also Miller v. City of Philadelphia*, 1997 WL 476352, at *6 (E.D. Pa. Aug. 19, 1997) (finding that Philadelphia Department of Human Services was a governmental agency and therefore did not have the capacity to be sued as an "unincorporated association" under Fed. R. Civ. P. 17(b)); *cf. Erie Human Relations Comm. v. Tullio*, 493 F.2d 371, 376 (3rd Cir. 1974) (Adams, J., concurring) (suggesting that under Rule 17(b), only private entities may be considered "unincorporated associations").

At the hearing, the Court focused on the fourth factor—adequacy of representation. Sewer argued that Plaintiffs Bryan and Moorhead could not adequately protect his interests because they were proceeding in this matter *pro se*.  In determining adequacy of representation, competence of a party to represent the interests of the party seeking intervention may be considered.  *See, e.g., Pierson v. United States*, 71 F.R.D. 75, 79 (D. Del. 1976) (noting that "the issue of adequacy" includes "questions of competence") (citation omitted).  However, when questioned by the Court on this contention, Sewer claimed only that he could better protect his interests because he was represented by counsel, not that Bryan and Moorhead were not competent to represent his interests.  Further, Sewer acknowledged that he had no legal authority to support the proposition that Plaintiffs' *pro se* status means that they are *per se* inadequate to "represent the prospective intervenor's interests." *Treesdale,* 419 F.3d at 220.  Accordingly, Sewer has failed to meet the requirements for intervention as of right.  *Id.*; Fed. R. Civ. P. 24(a)(2).

Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), permissive intervention is allowed, in the Court's discretion, when the party seeking to intervene "has a claim or defense that shares with the main action a common question of law or fact."  *Pa. Prison Soc. v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)).  Further, in exercising its discretion in determining whether to allow permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 n.6 (3d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)).

Here, Sewer's claims—as indicated in the Motion to Intervene—are virtually identical to those made by Plaintiffs in their Complaint and Motion for a Temporary Restraining Order, *to*

*wit*, that Act No. 7386 is preempted by Public Law 94-584 and Joint Resolution 33.   (*See* Mot. to Intervene at 1-9, Dkt. No. 16).   Further, the addition of a represented party in these proceedings—and the arguments of his counsel—may enhance the Court's understanding of the preemption claims made by Plaintiffs and Sewer.   Finally, allowing intervention will not result in delay of these proceedings or prejudice to the original parties.  *Pansy*, 23 F.3d at 779 n.6. Accordingly, the Court will exercise its discretion to allow Sewer to permissively intervene in this action pursuant to Fed. R. Civ. P. 24(b)(1)(B).  *See* Fed. R. Civ. P. 24(b)(1)(B).

### B.  Standing

Defendant 29th Legislature contends that Plaintiffs and Intervenor Sewer lack standing to bring this lawsuit because they have failed to show that they have been injured by Act No. 7386. Plaintiffs and Intervenor Sewer assert, on the other hand, that they have been injured by Act No. 7386 because it ousts them—and the other members of the Fifth Constitutional Convention— from their Congressionally mandated duties of drafting and revising the proposed constitution. They argue that Act No. 7386 empowers the five-member "legal team" of the Fifth Revision Constitution to revise the proposed constitution when—pursuant to Public Act No. 94-584 and Joint Resolution 33—that duty belongs *solely* to the elected delegates of the Fifth Constitutional Convention.

"Constitutional standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'"  *Lewis v. Alexander*, 685 F.3d 325, 338 (3d Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). If a plaintiff has not suffered an injury or does not stand to profit in some personal interest from resolution of the action, the

plaintiff has no standing, and the court is without jurisdiction to consider the action. *See Allen v. Wright*, 468 U.S. 737, 751, 766 (1984).

"Reduced to its constitutional minimum, standing requires three elements: (1) an injury in fact consisting of an actual or imminent invasion of a legally protected interest; (2) a causal connection between the injury in fact and the Defendants' conduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Lewis*, 685 F.3d at 338 (citing *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. (citing Lujan, 504 U.S. at 561). "In making the determination as to whether the threshold requirements of standing are satisfied, [the Court] must 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Dennis v. Luis*, 741 F.2d 628, 630 (3d Cir. 1984) (quoting *Warth*, 422 U.S. at 501).

The key question here is whether the alleged injury—the ousting of the statutory duty to revise the proposed constitution—is an "invasion of a legally protected interest." *Lewis,* 685 F.3d at 338.[6]  In *Dennis v. Luis*, the Third Circuit held that Virgin Islands legislators had standing to challenge the Governor's appointment of the Commissioner of Commerce over their objection based on a Virgin Islands statute which provided that the "Commissioner of Commerce is to be 'appointed by the Governor, with the advice and consent of the Legislature.'" 741 F.2d at 631 (quoting 3 V.I.C. § 332(b)).  The Court held that "[s]ince the right to advise and consent has been vested only in members of the legislature, and since only members of the legislature are bringing this action, the allegation that this right has been usurped by the Governor . . . [is]

---

[6]     Defendant 29th Legislature does not challenge the two additional standing elements—causation and redressability—and thus essentially concedes that, if Plaintiffs and Intervenor Sewer have shown injury-in-fact, they have satisfied the standing inquiry.

sufficiently personal to constitute an injury in fact, thus satisfying the minimum constitutional requirements of standing." *Id.*

Here, accepting Plaintiffs' and Intervenor Sewer's allegations as true, they have alleged that their statutory duty to revise the proposed constitution has been usurped by the Fifth Revision Convention's legal team. As in *Dennis*, the alleged abrogation of a statutory right is sufficient to satisfy the injury-in-fact requirement.[7] Accordingly, Plaintiffs and Intervenor Sewer—in their capacities as delegates of the Fifth Constitutional Convention—have standing to challenge Act No. 7386. *Dennis*, 741 F.2d at 631; *see also Lewis,* 685 F.3d at 338.[8]

### C. Preemption

Plaintiffs and Intervenor Sewer argue that Act. No. 7386 "is in direct conflict with PL 94-584 and Senate Joint Resolution 33," because Public Law No. 94-584 and Senate Joint Resolution 33 grant authority to only the Fifth Constitutional Convention to revise and submit a proposed constitution. (Plts.' Mot. at 3-4; *see also* Mot. to Intervene at 2-3). To succeed on this conflict preemption claim, Plaintiffs and Intervenor Sewer must show that Act No. 7386 "conflict[s] with an *affirmative command* of Congress." *Treasurer of N.J.,* 684 F.3d at 406

---

[7] At the hearing, Defendant 29th Legislature acknowledged that, if the Court accepted Plaintiffs' and Intervenor Sewer's claims as true, they would have demonstrated injury and would thus have standing to bring suit.

[8] Because the Court finds that Plaintiffs and Intervenor Sewer have standing as delegates to the Fifth Constitutional Convention—and can thus raise their argument that Act No. 7386 is preempted by federal law—the Court does not need to reach the question of whether they have standing in their individual capacities. *See Commonwealth of Pa. ex rel. Creamer v. U.S. Dept. of Agriculture,* 469 F.2d 1387, 1388 (3d Cir. 1972) (finding that because Commonwealth had demonstrated standing to raise claims through its interest in upholding its own laws, court did not need to reach Commonwealth's alternative standing argument); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F. Supp. 424, 427 (M.D. Ala. 1995) (finding that because plaintiff organization had standing to assert violations of the Developmental Disabilities Assistance and Bill of Rights Act "on its own behalf, it is unnecessary to determine representative capacity standing.").

(emphasis added).   As discussed below, Plaintiffs' and Intervenor Sewer's failure to so demonstrate renders their preemption claim invalid as a matter of law.

### 1.  Joint Resolution 33

Plaintiffs and Intervenor Sewer argue that Act No. 7386 conflicts with, and is therefore preempted by, Joint Resolution 33.   In support of this claim, Plaintiffs and Intervenor Sewer maintain that Joint Resolution 33 authorizes *only* the Fifth Constitutional Convention to revise the proposed constitution—rather than the Fifth Revision Convention authorized by Act No. 7386.  (Plts.' Mot. at 2-4; *see also* Mot. to Intervene at 3).

As discussed above, preemption occurs when territorial laws "conflict with an *affirmative command* of Congress." *Treasurer of N.J.,* 684 F.3d at 406 (emphasis added).  A statute or law that is non-obligatory cannot support a preemption claim. *See Trojan Technologies, Inc. v. Commonwealth of Pa*., 916 F.2d 903, 909 (3d Cir. 1990) ("Much of the statutory language is either aspirational or so general as to be insufficient to justify a finding of preemption . . . . We think it unlikely that a 'sense of Congress' is sufficient to preempt a state statute establishing a standards-related barrier.").

Joint Resolution 33 communicates the "sense of Congress" and "*urges* the Fifth Constitutional Convention of the United States Virgin Islands to reconvene for the purpose of reconsidering and revising the proposed constitution in response to the views of the executive branch of the Federal Government." S.J. Res. 33, 11th Cong., 124 Stat 1309, 1309-1310 (2010) (emphasis added).  Contrary to Plaintiffs' and Intervenor Sewer's claim, the language of Joint Resolution 33 provides no "affirmative command" or obligatory language; rather, it conveys the "sense of Congress" and contains precatory language "urg[ing]"—but not requiring—the Fifth Constitutional Convention to reconvene.

16

Other courts have construed similar federal provisions and found that they do not have the force of law.  For example, in *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987 (1st Cir. 1992), the First Circuit construed "42 U.S.C. § 10841, titled the 'Restatement of Bill of Rights for Mental Health Patients,'" which provided in pertinent part:

> *[i]t is the sense of Congress* that, as previously stated in [42 U.S.C. § 9501 et seq.], each State *should* review and revise, *if necessary*, its laws to ensure that mental health patients receive the protection and services they require, and that in making such review and revision, States *should* take into account the recommendations of the President's Commission on Mental Health and the following . . . .

*Id*. at 994 (quoting 42 U.S.C. § 10841) (emphasis in original).  The Court found that "[t]his use of the terms 'should' and 'the sense of Congress' indicate that the statute is merely precatory . . . [and] creates no enforceable federal rights." *Id*. at 994-95.  Similarly, in *Yang v. California Dept. of Social Services*, 183 F.3d 953 (9th Cir. 1999), the Ninth Circuit found that language in the Balanced Budget Act of 1997, Pub.L. No. 105–33, § 5566, 111 Stat. 639–640 (1997), which provided that "*[i]t is the sense of the Congress* that Hmong and other Highland Lao veterans . . . *should* be considered veterans for purposes of continuing certain welfare benefits consistent with the exceptions provided other noncitizen veterans under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 . . . yield[ed] the conclusion that this provision is precatory and did not bestow on Hmong veterans any right to food stamp benefits . . . [and] does not create positive, enforceable law." *Id*. at 958-59 (emphasis in original); *see also Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298, 330 (1994) ("precatory . . . Executive Branch communications that express federal policy but lack the force of law cannot render unconstitutional California's otherwise valid" tax laws).

Accordingly, because Joint Resolution 33 merely conveys "the sense of Congress" and "urges" the Fifth Constitutional Convention to reconvene, it is not an "affirmative command"

and "does not create positive, enforceable law."  *Yang*, 183 F.3d at 958-59; *see also Barclays Bank PLC,* 512 U.S. at 330; *Monahan*, 961 F.2d at 994-95.  Without an "affirmative command of Congress" that embodies an "enforceable federal right," Joint Resolution 33 cannot preempt Act No. 7386.  *Monahan*, 961 F.2d at 994-95; *Yang*, 183 F.3d at 958-59; *see also Barclays Bank PLC,* 512 U.S. at 330; *Treasurer of N.J.,* 684 F.3d at 406; *Trojan Techs., Inc.*, 916 F.2d at 909.

### 2.  Public Law No. 94-584

Plaintiffs and Intervenor Sewer also argue that Act No. 7386 conflicts with Public Law No. 94-584 because Act No. 7386 "grants authority to the [5thRC] to revise, propose, and submit a constitution for the U.S. Virgin Islands while PL 94-584 as amended only grants such authority to the [Fifth Constitutional] Convention to propose, revise, and submit a proposed constitution." (Plts.' Mot.  at 3; s*ee also Mot.* to Intervene at 2-4).

Public Law 94-584 provides in pertinent part:

(2) The Legislature[] of the Virgin Islands. . . [is] authorized to *call constitutional conventions* to draft . . . [a] constitution[] for the local self-government of the people of the Virgin Islands . . . .;

(3) The members of such constitutional conventions shall be chosen as provided by the laws of the Virgin Islands . . . .;

*** 

(5)(c)(1) If a convention reconvenes and revises the proposed constitution, the convention shall resubmit the revised proposed constitution simultaneously to the Governor of the Virgin Islands and the President.

Pub. L. No. 94-584 §§ 2, 3, 5(c), as amended by Pub. L. 111-194, 2010 S.J. Res. 33 (2010).

In their Motion, Plaintiffs did not specify what language in Public Law No. 94-584 supports their claim that Public Law No. 94-584 grants authority to *only* the Fifth Constitutional Convention to revise and submit a proposed constitution.  Similarly, at the hearing, Plaintiffs were unable to identify any portion of Public Law 94-584 which supports their preemption

claim.  Thus, Plaintiffs have failed to carry their burden of demonstrating a conflict between Public Law 94-584 and Act No. 7386.  *See Green,* 245 F.3d at 230 ("[T]he party claiming preemption bears the burden of demonstrating that federal law preempts state law.").

While Intervenor Sewer seeks to avoid this shortcoming, his argument is unpersuasive. Intervenor Sewer contends that Congress' use of the word "reconvene" in section 5(c)(1) of Public Law 94-584 indicates that Congress intended that *only* "a constitutional convention that submitted the proposed constitution" is authorized to revise it. (Mot. to Intervene at 3). However, in section 5, Congress does not *direct, require, or instruct* the Fifth Constitutional Convention—or any particular convention—to "reconvene."  Rather, section 5 states that "*if* a convention reconvenes and revises the proposed constitution" it "shall resubmit the revised proposed constitution simultaneously to the Governor of the Virgin Islands and the President." *Id.* (emphasis added).  The use of the word "if" renders the provision conditional, and, like the word "urge" in Joint Resolution 33, does not create an "affirmative command of Congress." *Treasurer of N.J.*, 684 F.3d at 406.[9]  Nor does the language of section 5 suggest that it is only *if* a convention reconvenes that revisions to a proposed constitution can be made.  Accordingly section 5(c)(1) of Public Law 94-584 does not preempt the sections of Act No. 7386 convening the Fifth Revision Convention.  *Id.*

Moreover, sections 2 and 3 of Public Law 94-584 authorize the Legislature of the Virgin Islands to "call constitutional conventions" and to make laws regarding the membership of such conventions.  Pub. L. No. 94-584 §§ 2-3, as amended by Pub. L. 111-194, 2010 S.J. Res 33 (2010).  In Act No. 7386, the Virgin Islands Legislature did precisely that by expressly

---

[9]     The Court need not reach the issue of whether the Fifth Revision Convention is a "reconvened" or new convention, because, even assuming that it is a new convention, its establishment—as discussed below—is entirely consistent with sections 2 and 3 of Public Law 94-584.

providing for the "establish[ment]" and "conven[ing] of the Fifth Revision Convention" which is comprised of "the 30 elected delegates of the Fifth Constitutional Convention and a legal team . . . consist[ing] of five (5) attorneys…." Act No. 7386 §§ 1(a), (c) and (e).[10]  These provisions are in harmony with section 2 and 3 of Public Law 94-584, and therefore cannot be said to create "an obstacle to the accomplishment" of Congress' objectives in authorizing the Virgin Islands to draft its own constitution.  Accordingly, Plaintiffs and Intervenor Sewer have failed to show a conflict between Act No. 7386 and Public Law 94-584.  *Treasurer of N.J.,* 684 F.3d at 406.

Plaintiffs and Intervenor Sewer also argue that "Act 7386 creates several violations of federal law [including]:  . . . [i]t does not specifically amend Act 6688, which created the Convention, and therefore, creates a conflict of law regarding the adoption of a proposed constitution;  . . .  [t]here now exists two separate entities with responsibility for proposing a constitution for the U.S. Virgin Islands; . . . [and] the [5thRC] includes as its voting members the thirty delegates of the Convention and five legal advisors appointed pursuant to the mandates of Act 7386 . . . " (Plts.' Mot. at 3-4; Mot. to Intervene at 4-7).  While Plaintiffs and Intervenor Sewer couch these claims as "violations of federal law," these arguments are really a claim that Act No. 7386 is in conflict with Act No. 6688—another *Virgin Islands* law.  Thus, these alleged conflicts raise no federal preemption issue.  *See Mabey Bridge & Shore, Inc.,* 666 F.3d at 868

---

[10]     At the hearing, Intervenor Sewer argued that the word "call" in section 2 of Public Law 94-584 must be interpreted to mean that the Virgin Islands Legislature is authorized to convene constitutional conventions at the outset, but not for purposes of revising a proposed constitution, and that the decision to disband a convention is left to the members of the convention.  This argument is unavailing.  First, there is nothing in Public Law 94-584, including section 5(c)(1), that so limits the Legislature in the calling of a convention.  Similarly, there is nothing in Public Law 94-584 that suggests that a convention—if its members so choose—can exist in perpetuity, especially in view of the power of the Legislature to call conventions as part of the overall purpose of Public Law 94-584 to allow "the people of the Virgin Islands . . . to organize governments pursuant to constitutions of their own adoption." Pub. L. 94-584 § 1.

("Conflict preemption occurs when . . . it is impossible for a [] party to comply with both *state and federal* requirements.") (emphasis added).[11]

Finally, at the hearing, Plaintiffs and Intervenor Sewer argued, for the first time, that "field preemption" applies in that Congress drafted Public Law 94-584 to "occupy the field" concerning the "process" for how the Virgin Islands must convene a constitutional convention when Congress has returned a proposed constitution. They concluded that, by convening the Fifth Revision Convention, Act No. 7386 impermissibly invades that field.  This argument is utterly groundless.   Field preemption occurs "when Congress has regulated an area *so pervasively that it has not left room for state regulation*."  *Treasurer of N.J.*, 684 F.3d at 406 (citing *United States v. Locke*, 529 U.S. 89, 111 (2000)) (emphasis added); *see also Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 868 (3d Cir. 2012) ("Field preemption occurs

---

[11]     The Court notes that Act No. 7386 begins by stating "[n]otwithstanding any other law or *any of the provisions of Act 6688 and the amendments thereto*, the 29th Legislature of the Virgin Islands provides the following law establishing and convening the Fifth Revision Convention [5thRC]." Act. No. 7386 § 1(a) (emphasis added). This "notwithstanding" clause—which refers specifically to Act No. 6688—indicates that the provisions of Act No. 7386 are meant to replace any conflicting provisions in Act No. 6688.  *See In re Federal-Mogul Global Inc.,* 684 F.3d 355, 369 (3d Cir. 2012) ("The Supreme Court has held that a 'notwithstanding' clause 'clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions.'") (quoting *Cisneros v. Alpine Ridge Grp*., 508 U.S. 10, 16 (1993)); *Johnson v. Orr,* 780 F.2d 386, 400 (3d Cir. 1986) (finding that "[t]he language of the Technicians Act expressly preempts relief under earlier statutes" because "[t]he preface to section 709(e) of the Act provides that its terms shall apply '[n]otwithstanding any other provision of law.'") (quoting 5 U.S.C. § 709(e)).   The case cited by Intervenor Sewer for the proposition that the phrase "notwithstanding any other law" in Act No. 7386 should be construed so as not to preempt the conflicting provision in Act No. 6688 was a case in which the literal interpretation of the "notwithstanding" clause would have negated a different provision in the same Congressional Act.  *See Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 797 (9th Cir. 1996) ("Were subsection 2001(b)'s phrase 'notwithstanding any other provision of law' given the broadest possible interpretation, subsection 2001(f)(4)'s allowance for legal challenges to salvage timber sales based on non-environmental laws would be nugatory.").   Thus, Plaintiffs' and Intervenor Sewer's argument that the provisions of Act No. 7386 and 6688 are in conflict would appear to be meritless.

when a field is reserved for federal regulation, leaving no room for state regulation, and congressional intent to supersede state laws is clear and manifest.").

Here, Congress enacted sections 2 and 3 of Public Law 94-584, which authorize the Legislature of the Virgin Islands to "call constitutional conventions" and to make laws regarding the membership of such conventions. Rather than leave no "room for [territorial] regulation," Congress has done exactly the opposite and authorized the Virgin Islands Legislature to make laws regarding the process for convening constitutional conventions and drafting a proposed constitution.  *See* Pub. L. No. 94-584 §§ 2-3.  Thus, field preemption does not apply.  *See Treasurer of N.J.,* 684 F.3d at 406; *see also Farina,* 625 F.3d at 121-22 ("Given Congress's and the FCC's . . . recognition of a role for state regulation within the field of RF emissions, we cannot conclude that federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.") (citing *Cipollone,* 505 U.S. at 516).

Accordingly, Plaintiffs and Intervenor Sewer have failed to show that either Public Law 94-584 or Joint Resolution 33 *requires* the Fifth Constitutional Convention to reconvene for the purpose of revising the proposed constitution, or that these laws authorize *only* the Fifth Constitutional Convention to revise the proposed constitution.  Moreover, the sections of Act No. 7386 establishing and convening the Fifth Revision Convention—including the provisions incorporating the "legal team" into the Fifth Revision Convention—are consistent with sections 2 and 3 of Public Law 94-584, and are therefore not in conflict with federal law.  Nor have Plaintiffs and Intervenor Sewer shown that Congress has "regulated . . . so pervasively" the area involving the convening of constitutional conventions when Congress has returned a proposed constitution such that field preemption applies.  As such, Plaintiffs' and Intervenor Sewer's

claims that Act No. 7386 is preempted by federal law fail as a matter of law. Because Plaintiffs and Intervenor Sewer have failed to show a likelihood of success on the merits, and likelihood of success on the merits is a dispositive element, Plaintiffs and Intervenor Sewer have failed to meet the requirements for a temporary restraining order. *Am. Exp.,* 669 F.3d at 366; *McTernan,* 577 F.3d at 528.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Fifth Constitutional Convention's Motion to Intervene must be denied, but that Sewer's oral motion to intervene should be granted. The Court also finds that Sewer and Plaintiffs have standing to assert their preemption claims. However, as discussed above and in the Court's October 5, 2012 Order, Plaintiffs and Intervenor Sewer have failed to demonstrate a likelihood of success on the merits of their preemption claims. Having already issued an Order denying the Motion for a Temporary Restraining Order, an appropriate Order addressing the motions to intervene accompanies this Memorandum Opinion.

Date: October 17, 2012                          _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge